**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

STEVEN LARON MCARTHUR,                                                            PLAINTIFF
ADC #95870

v.                                                      5:15CV00096-BRW-JTK

KENNIE L. BOLDEN, et al.                                                 DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.      Introduction

Plaintiff McArthur is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging Defendants failed to protect him from harm when he was attacked by a fellow inmate on October 30, 2014. (Doc. No. 2). He asks for monetary and injunctive relief.

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in support, and Statement of Facts (Doc. Nos. 64-66). Plaintiff filed a Response, Brief in support, Declaration in opposition, and Statement of disputed facts (Doc. Nos. 69-72). Defendants then filed a Reply (Doc. No. 73).

### II.     Complaint

According to his Complaint, Plaintiff discovered a shank hidden near his work station in the law library where he worked, during the first or second week of October, 2014 (Doc. No. 2, p. 3). Defendant Eason was located in the hall outside of the library area, and when Plaintiff attempted to get her to come into the library so he could show her what he found, she refused and told him to get

out of her "f___ing hallway." (Id.) Plaintiff then took the shank to his supervisor, who in turn gave it to Eason, who then gave it to a captain. (Id.) A few days later, inmate Edwards approached Plaintiff, called him a "snitch" for turning in the shank, and threatened him. (Id.) Plaintiff reported the threats in letters he sent to Defendants Bolden and Bradley on a couple of occasions. (Id.) Plaintiff also wrote a statement about the incidents and mailed it to Defendant Bolden, the chief of security. (Id., pp. 4, 13)

On October 26, 2014, inmate Edwards returned to the library and threatened Plaintiff. (Id.) Plaintiff was unable to get the attention of guards posted outside, and eventually hit Edwards in order to protect himself. (Id.) The two inmates fought, but did not report the incident to any officers. (Id.) Plaintiff was called into Defendant Bradley's office for questioning on October 28, 2014, after Bradley received a confidential statement which reported the fight. (Id.) Plaintiff initially refused to talk about it, but after Bradley threatened to charge him with a major disciplinary, Plaintiff told him about the shank, Edwards' threats, and the fight. (Id., p. 5) Bradley charged both Plaintiff and Edwards with disciplinary violations, and moved Edwards to 8 barracks. (Id.)

Plaintiff then filed an emergency grievance on October 30, 2014, after receiving word that Edwards threatened to harm him. (Id.) Plaintiff delivered the grievance to Sgt. Gibson in the dining hall on that date, and told Gibson that Edwards should have been moved to barracks 1-6 instead of barrack 8. (Id.) After Plaintiff left the dining hall, Edwards came up behind him in the tunnel area where no security guard was stationed, and stabbed Plaintiff in the back of the head. (Id., pp. 5-6) Edwards passed four guards and two metal detectors in order to enter the part of the Unit where he attacked Plaintiff. (Id., p. 7) Defendants Watson, Craig, Haynes, and Roberts were assigned in those areas. (Id.)

Plaintiff alleges as follows: Gibson did not immediately take the grievance to the Warden to determine if an emergency existed; someone in security inappropriately revealed his identity as the person who found the shank in the library; security failed to perform an adequate investigation into the owner of the shank; Defendants Bradley and Bolden failed to appropriately separate him from Edwards; the officers on duty on October 30, 2014, placed his life in danger when Edwards was allowed to walk through their areas and stab Plaintiff; and Defendant Thompson failed to appropriately classify the grievance Plaintiff submitted on October 30, 2014, as an emergency.

### III.  Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  Id.

### A.  Exhaustion

**1.     Defendants' Motion**

Defendants first ask the Court to dismiss them from Plaintiff's Complaint, for his failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA) and the ADC grievance policy, Administrative Directive (AD) 14-16 (Doc. No. 22-1). According to the declaration of Barbara Williams, Inmate Grievance Supervisor for the ADC, to properly exhaust administrative remedies, an inmate must file an informal resolution, a formal grievance with the Warden, and an appeal to the ADC Deputy/Assistant Director. (Doc. No. 64-4, p. 2) The grievance policy specifically requires inmates to "name each individual involved for a proper investigation and response to be completed by the ADC..," and to grieve only one claim per grievance. (Id.) Ms. Williams reviewed Plaintiff's grievance appeal files and located three grievances related to the allegations set forth in his complaint. (Id., p. 3) In VU-14-01515, filed October 30, 2014, Plaintiff complained that he was harassed by an inmate after he turned in a shank he found in the library, and that security failed to conduct a proper investigation to determine who placed the shank in the library. (Id.) Plaintiff did not name any ADC employees or officials in the grievance, and the grievance was found without merit by the Warden and on appeal to the Director. (Id.) In VU-14-1527, Plaintiff complained he was attacked by an inmate, and that security failed to conduct a proper investigation into the owner of the shank found in the library. (Id.) The only ADC employee named was Officer Giles, a non-party. (Id.) On appeal to the Director, the grievance was dismissed as duplicative to VU-14-01515. (Id., p. 4) The third grievance filed by Plaintiff, VU-14-01428, was submitted on November 7, 2014. (Id.) In this grievance, Plaintiff again complained that security failed to conduct a proper investigation into the shank incident, and failed to prevent inmate Edwards from passing through the new building to assault him. (Id.) This grievance also was not

5

addressed on appeal, because it was found to be duplicative. (Id.)  Based on these grievances, Defendants state Plaintiff failed to properly exhaust his administrative remedies.

### 2. Plaintiff's Response

In Response, Plaintiff states that the three grievances were not duplicative, and that ADC officials erred in rejecting the latter two on that basis.  He states that in his appeal of the Warden's decision in grievance VU-14-1515, he specifically named Defendant Eason for her failure to properly investigate the shank incident.  In addition, in VU-14-1528, he identified the officers who were working in the areas where inmate Edwards was improperly admitted on October 30, 2014.

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006).  The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.   In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001).  In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229

F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)).   In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

In Burns v. Eaton, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010)).

In the first grievance Plaintiff filed, VU-14-1515, he talked about the shank he found in the library and inmate Edwards' threats to him. (Doc. No. 64-2, p. 1) He complained that "security" placed his life in danger by failing to investigate both the incident and the person who identified him as the one who found the shank. (Id.) The Warden's response indicated that when Plaintiff took the shank to Mrs. Evans, he told her he found it in the library, and she then contacted Defendant Eason, who in turn gave the shank to D/W Andrews. (Id., p. 3) The response also noted that the issue was resolved, as Edwards was listed on Plaintiff's offender separation list. (Id.) In his appeal, Plaintiff

complained that Defendant Eason failed to investigate the shank incident or to question him, that this caused the altercation between he and Edwards in the library, and ultimately led to the attack on him by Edwards. (Id.) On appeal, the Director concurred with the Warden's decision. (Id., p. 4) The only Defendant mentioned in this grievance was Defendant Eason, and Plaintiff's Complaint that she failed to properly investigate his discovery of the shank in the library.

The next grievance, VU-14-1427, filed on October 31, 2014, concerned the October 30, 2014 attack on Plaintiff, and his claim that the attack was the result of security's failure to properly investigate the shank discovery. (Doc. No. 64-2, p. 5) The Warden found that the issue was addressed in the previous grievance, and that Edwards was on Plaintiff's separation list. (Id., p. 6) Plaintiff appealed, and complained that the issue of the grievance was not addressed, because security did not investigate who was responsible for placing the shank in the library, which in turn placed his life in danger and led to the stabbing. (Id.) On appeal, the Director found Plaintiff failed to follow policy and that the grievance was a duplicate of VU-15-1515. (Id., p. 7)

Plaintiff filed a third grievance on November 7, 2014 (VU-15-1528), again complaining about the lack of an investigation in to the shank incident. (Id., p. 8) He claimed Edwards stabbed him, but should have been housed in a separate barracks by "John Doe (guard who failed to properly separate)" instead of barracks 8. (Id.) He also named Defendants Roberts, Haynes, Craig, and Watson, as officers who placed his life in danger by allowing Edwards to pass through their areas with a shank in his possession. (Id.) The Warden found the matters of the grievance were previously addressed in VU-14-1515, and in his appeal, Plaintiff identified John Doe as Captain Bradley. (Id., p. 10) The Director then found the grievance "should have been rejected at the unit level as a duplicate of VU-14-01515," and declined to address the merits of Plaintiff's appeal. (Id.,

p. 11) Although Plaintiff claims to have submitted a fourth grievance, there is no record that it was ever submitted to an officer, because Plaintiff's copy lacks a number and an officer's signature, and he provides no record of a response.  (Doc. No. 2, p. 26)

Having reviewed these grievances, the Court finds that Plaintiff adequately exhausted his remedies as to Defendants Eason, Bradley (originally named John Doe and identified in Plaintiff's appeal to grievance VU-14-1528), Roberts, Haynes, Craig and Watson.  All but Defendant Eason were named in the third grievance (VU–14-1528), and although the Director did not address the merits of the grievance, the Unit Warden did.  The Court finds that these grievances sufficiently placed these Defendants on notice of the issue for purposes of the grievance policy and this lawsuit.  However, Defendants Bolden and Thompson are never identified or referred to in any of the grievances; therefore, these two Defendants should be dismissed for failure to exhaust.

**B.     Sovereign Immunity**

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities are barred by sovereign immunity.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

**C.     Qualified Immunity**

**1.     Defendants' Motion**

Defendants state they are protected from liability in their individual capacities by qualified immunity, because Plaintiff cannot show that he was incarcerated under conditions posing a substantial risk of serious harm, or that they subjectively knew of and disregarded the safety risk, citing Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996).  They refer to several failure-to-protect cases where the courts found prison officials protected from liability by qualified immunity when

9

the inmate plaintiff was injured in a surprise attack by another inmate. See Curry v. Crist, 226 F.3d 974 (8th Cir. 2000); Jackson v. Everett, 140 F.3d 1149,1152 (8th Cir. 1998); Prosser v. Ross, 70 F.3d 1005, 1007 (8th Cir. 1995). In this particular case, Defendants state that Officers Craig, Haynes, Roberts, and Watson (the officers on duty in barracks 9-14 on October 30, 2014) were not aware that Plaintiff found a shank in the library several days earlier, or that Plaintiff and Edwards had fought in the library on October 26, 2014. In addition, when Plaintiff first submitted grievance VU-14-1428, the receiving officer wrote, "Officer Watson stated before inmate Edwards left the barracks for pill call/diabetes call he was shaken down and had no shank in his position." (Doc. No. 64-2, p. 8) Defendants state this is proof that the officers did not disregard a safety risk to the Plaintiff.

Defendants also present the Declaration of Bolden in support of their positions. (Doc. No. 64-5) Bolden stated that he was unaware of any conflict between Plaintiff and inmate Edwards until October 29, 2014, when he received copies of the major disciplinary charges filed against them by Defendant Bradley. (Id., p. 1) Bolden stated that Plaintiff never informed him verbally or in writing that he was threatened by Edwards, and that Defendant Bradley was in charge of investigating allegations sent to him on October 28, 2014, by a confidential informant. (Id., p. 2) During the investigation, Plaintiff admitted he hit Edwards during an altercation in the library; following the admission, both inmates were provided medical treatment, and Edwards was relocated from barracks 17 to barracks 8. (Id.) Bradley charged both inmates with disciplinary violations, and recommended that they be placed on each other's enemy alert list. (Id.) Bolden stated that he was not present when Edwards assaulted Plaintiff on October 30, 2014, but that the area between 7-8 and 13-14 barracks was staffed with at least four officers on that date. (Id., p. 3) In addition, witness

statements were taken which reported that Edwards left his barracks to attend diabetic call, and was searched by Defendant Watson prior to exiting his barracks. (Id.) Once he traveled beyond the medical call area, he was re-directed to his assigned area, but assaulted Plaintiff prior to that time. (Id.)

Defendants also present copies of their Admissions in support of their claims that they were not aware of the prior altercation on October 26, 2014, between Plaintiff and inmate Edwards. (Doc. No. 64-9, pp. 2, 6, 9, 17, 21). Finally, Defendants present portions of Plaintiff's deposition testimony in which he admitted that when he tried to get Defendant Eason's attention the date he found the shank, he did not specifically tell her he found a shank; rather, he stated he wanted to tell her something important. (Doc. No. 64-3, p. 16) In addition, he admitted that he did not report the fight with Edwards to anyone, and that prior to that date, he had never had any problems with inmate Edwards. (Id., pp. 28-29) He also stated that on the day he was stabbed, he went to the dining area, picked up his meal tray, handed the grievance to Gibson, ate, and then walked back toward his barracks, all without seeing inmate Edwards. (Id., pp. 39-40) He stated that "he (Edwards) could have been hiding." (Id., p. 41)

### 2. Plaintiff's Response

Plaintiff claims that when Bradley and Bolden became aware of the fight in the library, they were required to advise the other Defendants of the security risk to him. In addition, Bradley has access to disciplinary records, which would reveal that Edwards has a history of stabbing. Plaintiff notes that Bradley admitted in his Admissions that he did not immediately send out an enemy notification on October 28, 2014, because the investigation into the incident was still pending. (Doc. No. 64-9, p. 12) He also denies that Edwards is diabetic, and had no reason to be released for

diabetic pill call on October 30, 2014, and he claims Defendants improperly failed to screen Edwards as he walked through their respective hallways.  Plaintiff also claims that he directly informed Defendant Haynes of the fight with Edwards, and "had she been doing her job and performing her duties by monitoring inmates in the library she should have known the fight occurred." (Doc. No. 72, p. 4)

Based on the above, Plaintiff claims Defendants should have been aware of the fight in the library, should have properly separated him from Edwards and placed each other on enemy alert lists, and should have stopped Edwards before he could stab Plaintiff.  He also claims that several assaults have occurred in the same area in the last three years, and that Defendants failed to take reasonable measures to protect him from the attack by Edwards.

### 3.     Defendants' Reply

Defendants object to several statements and affidavits offered by Plaintiff in his Response to their Motion, which contradict both his Complaint and deposition testimony.  For example, Plaintiff's claim in his Response that he told Defendant Haynes about the fight directly contradicts his claim in his Complaint and his deposition testimony that both he and Edwards did not tell anyone about the fight after it occurred.  These contradictory statements, Defendants state, should not be considered, as "a party cannot avoid summary judgment by contradicting his own earlier testimony." Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995).  Similarly, Defendants object to Plaintiff's current statements that he informed Gibson (non-party) that Edwards planned to stab him, whereas in his deposition he stated that he handed Gibson his grievance and sat down and ate lunch.  (Doc. No. 64-3, p. 84)

Defendants also object to hearsay statements contained in affidavits offered by Plaintiff, citing Jones

v. McNeese, 746 F.3d 887, 899 (8th Cir. 2014), and Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983).

### 4. Analysis

Qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

In <u>Jackson v. Everett</u>, the Eighth Circuit Court of Appeals held that a prison official was entitled to qualified immunity from liability in a failure to protect case, where the inmate Plaintiff failed to provide evidence that the official recklessly disregarded a risk of harm to him. 140 F.3d 1149 (1998). Although the official had been notified of threats to the inmate, he investigated the threats, questioned the inmates involved, monitored their activities, and reported the incident. <u>Id</u>. at 1152. The Court noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." <u>Id</u>. (quoting <u>Prater v. Dahm</u>, 89 F.3d 538, 541 (8th Cir. 1996)). The Court concluded, that "mere negligence does not 'support a conclusion that [Everett] exercised a callous disregard or reckless indifference in responding to the risk." <u>Id.</u> (quoting <u>Bailey v. Wood</u>, 909 F.2d 1197, 1200 (8th Cir. 1990)).

Plaintiff's allegation against Defendant Eason concerns her failure to leave her post in the hallway outside the law library when he told her he needed to show her something, and her failure to investigate the owner of the shank. However, he admitted in his deposition that he never told her that he found a shank, just that he needed to show her something. In addition, there is no dispute that when he gave the shank to his supervisor (Mrs. Evans), she gave it to Eason, who then turned it over to her supervisor. There is no evidence that Eason was responsible for investigating the owner of the shank. In addition, although Plaintiff claims that her failure to investigate ultimately led to Edwards' threats, the fight between them in the library, and the attack by Edwards, he provides no evidence that Eason was the source who identified him to Edwards as having found the shank. Based on this lack of evidence, the Court finds that no reasonable fact finder could find that Eason acted with deliberate indifference to Plaintiff's safety.

Plaintiff's allegation against Defendant Bradley is limited to his failure to immediately place

14

Edwards on his enemy alert list on October 28, 2014, or to effectively separate them from each other. Plaintiff, however, admitted that he did not report the fight with Edwards on October 26, 2014, and initially did not want to provide any details when Bradley confronted him about it on October 28, 2014, after learning about it from a confidential informant. There also is no dispute that immediately after speaking with Plaintiff, Defendant Bradley moved Edwards from 17 barracks to 8 barracks. According to a diagram provided by Plaintiff, 17 barracks is on the far end of one wing of the Unit, and 8 barracks is on the opposite end of another wing of the Unit, and the two wings are separated by the tunnel area where Plaintiff was stabbed. (Doc. No. 62, p. 2) Defendants also provide a document dated October 28, 2014, entitled "Offender Separation Alert", which lists Edwards as an enemy of Plaintiff. (Doc. No. 64-7) Based on all this evidence, the Court finds that no reasonable fact finder could find that Bradley's actions in moving Edwards to a different barracks in a different wing, and in charging both with disciplinary violations, amounted to deliberate indifference to Plaintiff's safety.

Plaintiff's allegations against Defendants Watson, Craig, Haynes, and Roberts are that they should have prevented Edwards from traveling from 8 barracks to 13-14 barracks where he attacked Plaintiff. Plaintiff provides no proof that these Defendants were aware of a risk of harm to him; rather, he claims that because protocol requires that each shift be made aware of physical altercations between inmates, they should have been aware of the fight that occurred between the two (the fight which he failed to report). Plaintiff does not dispute that Watson searched Edwards prior to releasing him for pill call. And, Plaintiff admitted in his deposition that he himself did not see Edwards when he traveled from the cafeteria back to his barracks, and that he could have been hiding. (Doc. No. 64-3, p. 41) Rather, he claims Defendants created a risk to his safety when they

15

allowed Edwards to proceed out of the pill call area into the other barracks. However, again, he provides no evidence that they were aware that Edwards posed a risk of harm to him, saw Edwards traveling through their areas, and deliberately failed to stop him. The Court does not accept as credible Plaintiff's most recent claim that he told Defendant Haynes about the prior fight, when in both his Complaint and his deposition he maintained that he told no one about the fight until he was confronted by Defendant Bradley. See Prosser v. Ross, 70 F.3d at 1008. Therefore, at the most, the evidence supports a finding that these Defendants were negligent in their duties, which does not support a finding of a constitutional violation. Jackson v. Everett, 140 F.3d at 1152.

In conclusion, after close review of the evidence presented by the parties, the Court finds that Defendants acted reasonably under the circumstances. No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 64) be GRANTED.

2. Plaintiff's claims against Defendants Bolden and Thompson be DISMISSED without prejudice, for failure to exhaust.

3. Plaintiff's claims against Defendants Bradley, Craig, Eason, Haynes, Roberts, and Watson be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 22nd day of February, 2016.

$\underline{\hspace{3in}}$
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE